[No. 56326-2-I. Division One. July 3, 2006.]

NORTHLAKE MARINE WORKS, INC., *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES ET AL., *Respondents*.

274

*Michael W. Gendler* and *Lauren P. Rasmussen* (of *Gendler & Mann, L.L.P.*), for appellant.

*Benjamin G. Porter* and *Laurie D. Kohli* (of *Porter, Kohli & LeMaster, P.S.*); *Robert M. McKenna, Attorney General*, and *Joseph V. Panesko, Assistant*; and *Thomas A. Carr, City Attorney for the City of Seattle*, and *Judith B. Barbour, Assistant*, for respondents.

¶1 APPELWICK, C.J. — Lake Washington Rowing Club obtained permits from the Department of Natural Resources (DNR), the city of Seattle, and the Army Corps of Engineers (ACE) to install a ramp and floating dock in Waterway 23 at the north end of Lake Union. Northlake Marine Works, Inc., operates a marina on property adjacent to Waterway 23. Northlake filed a state court challenge to DNR's and the city's statutory authority under state law to issue the permits. DNR argued that Northlake failed to

exhaust its administrative remedies and also that DNR had statutory authority to issue the permits.

¶2 We hold that Northlake did not fail to exhaust its remedies or otherwise improperly bring its action. We hold that RCW 79.93.010 does not prohibit DNR from issuing use permits for portions of state waterways waterward of the federal pierhead line. The permit for the Rowing Club's use of Waterway 23 was authorized consistent with state law. We do not decide whether the trial court properly granted the statutory writ because the remainder of this opinion renders that issue moot. We affirm the trial court's grant of summary judgment to DNR and the city. We reverse the trial court's conclusion that Northlake was not trespassing in the waterway. We remand to the trial court for further fact-finding, to determine the amount of damages on the trespass claim, and to award fees and costs.

## FACTS

¶3 This case concerns various governmental entities' power to authorize use of waterways. Waterway 23 is at the north end of Lake Union within the city of Seattle. Northlake owns shoreland adjacent to Waterway 23 and operates a marina and other businesses from that location. The Rowing Club obtained a permit from DNR, the city of Seattle, ACE, and other entities to install a ramp and floating dock in Waterway 23.

¶4 Northlake filed an action challenging DNR's authority to issue a permit and a separate action challenging the city's authority to issue a permit.[1] These actions were consolidated after the trial court granted a statutory writ of review for the city's permit. Northlake moved for summary judgment on the issue of DNR's statutory authority. DNR moved for partial summary judgment on the ground that

---

[1] Northlake also brought a nuisance claim against the Rowing Club but voluntarily dismissed that claim. The Rowing Club made a nuisance counterclaim against Northlake for the existing Northlake structures. The trial court dismissed that counterclaim, and the Rowing Club has not cross-appealed that part of the trial court's ruling.

Northlake failed to exhaust its administrative remedies. The city and the Rowing Club joined DNR's opposition. The trial court granted DNR's motion and denied Northlake's motion. The trial court ruled in favor of DNR that Northlake failed to exhaust its administrative remedies, while also addressing the merits and concluding that DNR issued its permit consistent with state law. The trial court dismissed Northlake's claims against the city on the ground that the success of these claims was dependent on the success of Northlake's challenge to DNR's permit.

¶5 DNR also made a trespass counterclaim against Northlake regarding other structures in the waterway that Northlake had built earlier. The trial court ruled in favor of Northlake on DNR's trespass counterclaims after a bench trial, concluding that DNR failed to prove its trespass claims.

¶6 Northlake appeals the trial court's grant of summary judgment to DNR and the city. DNR argues that the trial court erred in finding that Northlake was not trespassing and in its rulings on that claim. The city argues that the trial court erred in issuing a statutory writ of review.

## DISCUSSION

### I. Foundation

¶7 Waterways are essentially aquatic streets. RCW 79.93.010.[2] Unlike most states, Washington "claims absolute fee simple ownership of the land underlying its waters." *Draper Mach. Works, Inc. v. Dep't of Natural Res.*, 117 Wn.2d 306, 313, 815 P.2d 770 (1991) (citing WASH. CONST. art. XVII, § 1; *Port of Seattle v. Or. & Wash. R.R.*, 255 U.S. 56, 64, 41 S. Ct. 237, 65 L. Ed. 500 (1921)). This land is divided into several categories depending on its location and function. One of these categories is "harbor

---

[2] Many of the statutes involved in this case were amended in 2005. However, these technical amendments were not intended to have any substantive policy implications. RCW 79.105.001. We cite to the former versions of the statutes, which were in place at the time this lawsuit was filed and which are cited by the parties in their briefs.

areas" that are designated by outer and inner harbor lines and reserved for conveniences of navigation. *Draper*, 117 Wn.2d at 313 (citing WASH. CONST. art. XV, § 1; RCW 79-.90.015, .020, .025). The state is prohibited from granting any private rights beyond the outer harbor line but empowered to allow private leases in the harbor area. *Davidson v. State*, 116 Wn.2d 13, 16, 802 P.2d 1374 (1991) (citing WASH. CONST. art. XV, § 1).

¶8 The federal harbor system is overlaid on the state harbor system. Federal pierhead lines are established by the Secretary of the Army to protect harbors. *Draper*, 117 Wn.2d at 314. "[N]o piers, wharves, bulkheads, or other works shall be extended" waterward of the pierhead line without a federal permit. 33 U.S.C. § 404.[3] Landward of the pierhead line, no federal money can be spent to dredge. 33 U.S.C. § 628. Federal pierhead lines are thus analogous to state harbor lines for purposes of maintaining navigability, although these lines need not be coterminous. *Draper*, 117 Wn.2d at 314.

¶9 Waterways are areas within harbor areas where development and building are generally not allowed. *Draper*, 117 Wn.2d at 314 (citing RCW 79.93.010). Waterways act as "water streets allowing access from the deep water outside the harbor to the wharves and docks built within the harbor."[4] *Draper*, 117 Wn.2d at 314.

---

[3] Section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403, gave the federal government the authority to regulate the placement of obstructions in navigable waters. *N. Shore Boom & Driving Co. v. Nicomen Boom Co.*, 212 U.S. 406, 411-13, 29 S. Ct. 355, 53 L. Ed. 574 (1909). If the federal government consents to construction extending waterward of a pierhead line, then it has concurrent or joint jurisdiction with the state government over that portion of the construction. *N. Shore Boom*, 212 U.S. at 412 (citing *Cummings v. Chicago*, 188 U.S. 410, 23 S. Ct. 472, 47 L. Ed. 525 (1903)). The federal permitting process is dependent on obtaining state and local government approval. 33 C.F.R. § 320.4.

[4] A "waterway" is any area the state has specifically designated as such under chapter 79.93 RCW. It can include a strip along an entire shoreline or an area, such as Waterway 23, that is a waterway similar to a street designated between the shore and the main navigation channel.

## II. Northlake Did Not Fail To Exhaust Its Administrative Remedies

¶10 DNR argues that Northlake's suit must be dismissed because Northlake failed to exhaust its administrative remedies by appealing the use authorization issued under chapter 79.93 RCW as provided in RCW 79.90.400 or, alternatively, because Northlake's claim was an improper rule challenge. DNR argues that Northlake had an adequate remedy at law under RCW 79.90.400. Under this statute,

> [a]ny applicant to purchase, or lease, any aquatic lands of the state, or any valuable materials thereon, and any person whose property rights or interest will be affected by such sale or lease, feeling himself or herself aggrieved by any order or decision of the board, or the commissioner, concerning the same, may appeal therefrom in the manner provided in RCW 79.02.030.

Northlake argues that its challenge to DNR's waterway use authorization was not governed by RCW 79.90.400 because the use authorization was not a lease. Thus, Northlake contends, RCW 79.90.400 did not provide it with a remedy at law and there were no remedies for it to exhaust.

¶11 DNR urges the court to hold that the word "lease" carries a much broader meaning in chapter 79.90 RCW than it does in chapter 79.93 RCW and that a narrow interpretation would create "absurd" results. But language in chapter 79.90 RCW shows that DNR's suggested interpretation is broader than the legislature intended. RCW 79.90.470 provides:

> (1) The use of state-owned aquatic lands for public utility lines owned by a governmental entity shall be granted by an *agreement, permit,* or *other instrument* if the use is consistent with the purposes of RCW 79.90.450 through 79.90.460 and does not obstruct navigation or other public uses. . . . The department may *lease* bedlands in front of state parks only after the department has consulted with the state parks and recreation commission.
>
> (2) The use of state-owned aquatic lands for local public utility lines owned by a nongovernmental entity will be granted

by *easement* if the use is consistent with the purpose of RCW 79.90.450 through 79.90.460 and does not obstruct navigation or other public uses.

(Emphasis added.) This statute refers explicitly to "permit[s]," "agreement[s]," "easement[s]," and "other instrument[s]" in addition to "lease[s]." When the legislature uses a particular term in one statute with a particular meaning, it is presumed to have the same meaning when used in another statute on the same subject matter unless the context indicates a different meaning. *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 197, 550 P.2d 7 (1976). Here, the legislature distinguished leases from permits and other instruments in RCW 79.90.470. This leads to the conclusion that it intended the same distinction to apply throughout the chapter, including in RCW 79.90.400, a section on the same subject matter. This distinction suggests the appeal provisions do not apply to the permit in question.

¶12 The legislature provided separate statutory authority to bring some non-"sale or lease" decisions[5] under the purview of the RCW 79.90.400 appeals process. This shows the legislature believed that the language of the statute would not otherwise cover these non-"sale or lease" decisions. To construe the legislative scheme otherwise would render these statutory provisions superfluous. *See Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (holding that statutes "must be construed so that all the language is given effect and no portion is rendered meaningless or superfluous"). Separate and express inclusion of certain permit types under the appeal provisions suggests that permit types not listed were not included.

¶13 Furthermore, the *Draper* court analyzed a document under these same sections and distinguished the treatment of a permit from a lease. *Draper*, 117 Wn.2d at 319 (noting that the term applied to a document by the parties does not

---

[5] *See, e.g.*, RCW 79.90.400 (sale of valuable materials on state aquatic lands); RCW 79.90.105(3) (decisions withdrawing permission for free use of residential docks or mooring buoys); RCW 79.90.320 (appraisals of the value of improvements remaining on an expired leasehold).

determine the nature of the grant but that the court must look to the nature of the right to learn its true character). We conclude that the use authorization in this case was not a lease and therefore was not subject to the appeals process set forth in RCW 79.90.400.

¶14 We also reject DNR's argument that Northlake's challenge to the use authorization is a de facto challenge to DNR rulemaking. Northlake did not challenge DNR's statutory authority to adopt WAC 332-30-117 but rather DNR's statutory authority to issue this particular permit. Nothing in the Washington Administrative Code purports to authorize DNR to allow structures in conflict with RCW 79.93.040. WAC 332-30-117 "describes the requirements for authorizing use and occupation of waterways under the department's authority." WAC 332-30-117(1). The rule does not purport to authorize structures in conflict with any statute, and no rulemaking challenge was required. Instead, Northlake challenges DNR's interpretation that chapter 79.93 RCW does not prohibit DNR from issuing permits for uses waterward of the federal pierhead line.

III. Authority To Issue Use Permits Waterward of the Federal Pierhead Line

A. DNR's Broad Management Authority over State Aquatic Lands Includes Authority To Issue Use Permits Both Landward and Waterward of the Federal Pierhead Line

¶15 An agency may exercise only those powers conferred by statute and cannot authorize action in absence of statutory authority. *Skagit Surveyors & Eng'rs, L.L.C. v. Friends of Skagit County*, 135 Wn.2d 542, 558, 958 P.2d 962 (1998). Northlake argues that chapter 79.93 RCW prohibits DNR from issuing use permits for uses of waterway waterward of federal pierhead lines. Northlake argues that RCW 79.93.040 creates an exception for the "strip" of waterway landward of federal pierhead lines. Northlake also argues that because no statute similar to RCW 79.93.040 authorizes DNR to issue use permits in

waterway areas waterward of federal pierhead lines, DNR lacks statutory authority to issue use permits for those locations. Further, Northlake argues that by specifying locations landward of the federal pierhead line where DNR has authority to issue permits, RCW 79.93.040 carries a negative implication that there is no authority to issue permits in other areas of waterways.

¶16 In *Draper*, the Washington Supreme Court addressed DNR's statutory authority under RCW 79.93.040. The *Draper* case concerned part of a strip of state-owned waterway on the south side of Salmon Bay. *Draper*, 117 Wn.2d at 308-10, 315. Originally, the federal pierhead lines and state waterway boundaries in Salmon Bay waterway were coterminous. But in 1949, the federal government moved its pierhead line north. *Draper*, 117 Wn.2d at 309. As a result, there was "a stretch of waterway between the waterway line and the federal pierhead line . . . which was no longer considered by the federal government to be necessary for navigation in the ship canal." *Draper*, 117 Wn.2d at 309.

¶17 In 1959, Draper obtained a 10-year "lease" from DNR to construct boat moorage facilities in this "intervening waterway." *Draper*, 117 Wn.2d at 310. The agreement was renewed in 1969 and was set to expire in 1984. As part of Draper's agreement with DNR, Draper paid rent for its use of the waterway. In 1979, DNR sought to increase the rent to fair market rental value. *Draper*, 117 Wn.2d at 310. Draper objected, stopped paying rent, and sought a return of rent "wrongfully" paid to DNR. *Draper*, 117 Wn.2d at 310. Draper argued that DNR was prohibited from leasing the waterway under RCW 79.93.010 and thus could not charge rent for the use of the waterway. *Draper*, 117 Wn.2d at 308-10, 315.

¶18 In *Draper*, the parties cited the apparent conflict between the same statutes at issue here. RCW 79.93.010 provides:

It shall be the duty of the department of natural resources simultaneously with the establishment of harbor lines and the

determination of harbor areas in front of any city or town, or as soon thereafter as practicable, to . . . establish one or more public waterways . . . as in the judgment of the department may be necessary for the present and future convenience of commerce and navigation. All waterways shall be reserved from sale or lease and remain as public highways for watercraft until vacated as provided for in this chapter.

RCW 79.93.020 provides:

All alleys, streets, avenues, boulevards, [and] waterways . . . not heretofore vacated as provided by law, are hereby validated as public highways and dedicated to the use of the public for the purposes for which they were intended, subject however to vacation as provided for in this chapter.

RCW 79.93.040 provides:

If the United States government has established pierhead lines within a waterway created under the laws of this state at any distance from the boundaries established by the state, structures may be constructed in that strip of waterway between the waterway boundary and the nearest pierhead line only with the consent of the department of natural resources and upon such plans, terms, and conditions and for such term as determined by the department. However, no permit shall extend for a period longer than thirty years.

The department may cancel any permit upon sixty days' notice for a substantial breach by the permittee of any of the permit conditions.

¶19 The *Draper* court held that RCW 79.93.010 "clearly *does not* allow any private use of public waterways other than for navigation." *Draper*, 117 Wn.2d at 317-18 (citing *Laurelhurst Club, Inc. v. Backus*, 161 Wash. 185, 191, 296 P. 819 (1931)). But, "in RCW 79.93.040, the Legislature has recognized that when a pierhead line is waterward of a waterway line, the portion of the waterway between the lines no longer must be kept open to provide a public benefit." *Draper*, 117 Wn.2d at 318. The *Draper* court concluded that RCW 79.93.010 and .040 together provide that waterways may never be sold or leased but may be put to use where they lie landward of a federal pierhead line. *Draper*, 117 Wn.2d at 315. The *Draper* court further held

that DNR could collect rent for such uses. *Draper*, 117 Wn.2d at 315-19.

¶20 The *Draper* court commented that Draper could not have built its structure if there was no such strip. *Draper*, 117 Wn.2d at 315. This implies that DNR would have no authority to issue a permit for such structures. The *Draper* court also noted that waterward of the pierhead line, there can be no construction without a federal permit. *Draper*, 117 Wn.2d at 314-15; *see also* 33 U.S.C. § 404. This language implies that construction could be authorized waterward of the federal pierhead line with a federal permit. The *Draper* court, however, did not have before it the question of whether DNR had authority to allow uses of waterways *waterward* of the federal pierhead line. That question is presented here.

¶21 The *Draper* court identified the purpose of RCW 79.93.010 and .040:

> In view of this statutory scheme, the purpose of RCW 79.93.010 and .040 is obvious. Both statutes work together to protect and maintain certain areas as "water highways"; to prevent development from encroaching into those highways and choking off navigation and commerce. This is the purpose behind RCW 79.93.010's reservation of waterways from sale or lease. RCW 79.93.040 merely acts as a proviso to this reservation. In it the Legislature recognized that the federal pierhead line serves essentially the same function as the waterway line for navigational purposes. Both exist to ensure navigable "avenues" of open water. Therefore, if a pierhead line exists waterward of a waterway line, the intervening waterway *can be* built on because the pierhead line continues to protect navigability.

*Draper*, 117 Wn.2d at 314-15. RCW 79.93.040 therefore effectively precludes DNR from finding that structures landward of the federal pierhead line would interfere with the navigability of the "water highways" and thereby be prohibited under RCW 79.93.010. The legislature also added a restriction on DNR's discretion in issuing use permits in such areas: DNR cannot grant permits for

durations longer than 30 years and its permits must be revocable on 60 days notice for substantial breach of terms and conditions. We see no basis for concluding that the restrictions imposed on DNR in this section create any negative implication regarding DNR's authority to issue use permits waterward of the federal pierhead line.

¶22 Northlake is correct that the statute does not explicitly identify a grant of authority to DNR to regulate beyond the federal pierhead line. However, the legislature has given DNR[6] broad management authority of state aquatic lands including waterways:

> The legislature finds that state-owned aquatic lands are a finite natural resource of great value and an irreplaceable public heritage. The legislature recognizes that the state owns these aquatic lands in fee and *has delegated to the department of natural resources the responsibility to manage these lands* for the benefit of the public. The legislature finds that water-dependent industries and activities have played a major role in the history of the state and will continue to be important in the future. The legislature finds that revenues derived from leases of state-owned aquatic lands should be used to enhance opportunities for public recreation, shoreline access, environmental protection, and other public benefits associated with the aquatic lands of the state. The legislature further finds that aquatic lands are faced with conflicting use demands.

RCW 79.90.450 (emphasis added). The legislature has also set forth management guidelines:

> The management of state-owned aquatic lands shall be in conformance with constitutional and statutory requirements. The manager of state-owned aquatic lands shall strive to provide a balance of public benefits for all citizens of the state. The public benefits provided by aquatic lands are varied and include:
>
> (1) Encouraging direct public use and access;
>
> (2) Fostering water-dependent uses;
>
> (3) Ensuring environmental protection;

---

[6] Throughout chapters 79.90 through 79.96 RCW, "Department" means the Department of Natural Resources. RCW 79.90.465(6).

(4) Utilizing renewable resources.

Generating revenue in a manner consistent with subsections (1) through (4) of this section is a public benefit.

RCW 79.90.455. *See also* RCW 79.90.460 (setting out the priority of water-dependent uses of waterways and vesting leasing authority over such lands in DNR). DNR is restricted from selling or leasing waterways under RCW 79.93.010. However, that statute does not restrict DNR from permitting uses of waterways. As DNR notes, RCW 79.93.040 does not expressly prohibit it from issuing permits in any particular portion of a waterway.

¶23 We hold that under these statutes, DNR has been granted authority to manage state aquatic lands, including waterways, both landward and waterward of the federal pierhead line. DNR has been given authority to issue use permits in waterway areas waterward of the federal pierhead line subject to certain limitations. DNR's permitting authority is subject to the prohibition on sale or lease of the waterways found in RCW 79.93.010. It is subject to preservation of waterways for navigation. It is subject to the concurrent jurisdiction of the federal government under section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403. It is also subject to other legislative direction. The legislature has identified the encouragement of direct public use and access as a public benefit. RCW 79.90.455. It has decreed that the "management of state-owned aquatic lands shall preserve and enhance water-dependent uses," such as launching facilities. RCW 79-.90.460-.465.

B. The City Has Statutory Authority To Issue Street Use Permits for Waterways within Its Jurisdiction

¶24 Northlake challenges the statutory validity of the city's use permit. Northlake does not challenge the city's exercise of discretion or other procedures in issuing the permit. Rather, Northlake argues that the city cannot do, in contravention of state law, what Northlake argues the state and the federal government cannot do: authorize use of waterways waterward of federal pierhead lines. The city

argues that the trial court erred in issuing a statutory writ of review under chapter 7.16 RCW to review the street use permit.

¶25 As noted above, chapter 79.93 RCW does not prohibit all use of a waterway waterward of a federal pierhead line with the appropriate federal and state permits. Cities have jurisdiction over navigable waters within their corporate limits and exercise police power to regulate public and private use of those waters. WASH. CONST. art. XI, § 11; RCW 35.21.160; RCW 79.93.010; Seattle Municipal Code (SMC) 16.08.010; Title 16.60 SMC. In *Baxter-Wyckoff Co. v. City of Seattle*, 67 Wn.2d 555, 560-61, 408 P.2d 1012 (1965), the court held that cities could grant use permits giving private companies the right to use public streets platted on tidelands despite acknowledging that the streets belong to the public. This is true although, like waterways, city streets platted on tidelands are "declared public highways." RCW 35.21.230. The city had authority to issue a street use permit here.

¶26 The trial court found that Northlake did establish standing for declaratory judgment. Thus, it could review the city's grant of a use permit without issuing a statutory writ. Therefore, the propriety of issuing a statutory writ to review the permit is moot.

### C. The Permits Issued to the Rowing Club Were Issued Consistent with State Law

¶27 It is clear that the ramp and dock built by the Rowing Club provide a public benefit that aids navigation.[7] No governmental agency involved in the permitting process has found that this structure creates any adverse impact on

---

[7] The parties disagree on the extent to which the Rowing Club is presently allowing public access. But the city's use permit specifically requires public access. And, the sign on the gate notifies the public that it can request access to the facility. If the Rowing Club is not allowing public access as required by its permit, it is violating the terms of its permit.

the navigability of the waterway.[8] The city of Seattle has issued a street use permit consistent with its authority and its procedures.[9] This permit does not vest any permanent right in the Rowing Club. SMC 15.04.070. ACE has issued the required section 10 permit to satisfy 33 U.S.C. §§ 403--04. DNR has issued a permit consistent with its statutory authority and consistent with legislative policy directives. Thus, the Rowing Club obtained all necessary federal and state permits and could build its dock consistent with state law.[10]

## IV. Northlake's Use of the Waterway Is a Trespass Entitling DNR to Collect Trespass Compensation

¶28 Northlake first put structures in Waterway 23 in the 1940s. Northlake's owner testified that although he thinks waterways should be kept completely open, DNR was not regulating use of the waterways at that time and Northlake placed the structures there to make sure that no one else would.[11] Northlake sought city and state permission. Both entities responded that anyone could use the waterways.

¶29 In 1971, a King County Superior Court decision held that in the absence of DNR's exercise of its statutory authority to manage the waterways, the city was autho-

---

[8] ACE specifically found that sufficient clearances existed such that the structure would not impede water access by neighboring property owners and would not impede navigation passage through Lake Union or the Lake Washington Ship Canal. No agencies involved in the process culminating in the issuance of the use authorization found that the structure would impact navigation.

[9] As part of the permitting process, the city of Seattle requires approval from the director of the Department of Transportation, the State of Washington, the Port of Seattle, and ACE before any fixed structure can be placed in a waterway. SMC 16.60.040.

[10] We note that there is no particular provision in either state or federal law specifying in which order the party seeking authority to use a waterway must obtain permits or consent, only that all the required permits and consent must be obtained to validate the use.

[11] Northlake is not the only party with structures in waterways. A DNR land manager testified that she was aware of other structures in other waterways during her tenure. She testified that the Center for Wooden Boats has some structures in Waterway 4. Northlake's owner testified that there is a pier and concrete float in Waterway 22; that Waterway 21 contained so many "structures, floating structures, dry docks, boat sheds, that you couldn't get a rowboat down the middle of it"; and that Waterway 20 contains Seattle police structures.

rized to do so. The city subsequently implemented a fee-based permit system for waterways. Northlake obtained permits from the city and has paid annual fees to the city from that time through trial. Northlake never received permission from the state for its waterway structure.

¶30 In 1986, Northlake received letters from the city and DNR acknowledging the adoption of chapter 332-30 WAC and indicating that DNR had been directed to exercise its authority to manage waterways. Northlake did not receive any application forms from DNR until 1996, when its aquatic lands lease (not related to this litigation) expired. Northlake applied for waterway permits at that time, but DNR did not act on those over the next decade. DNR had not sought payment or other relief from Northlake until Northlake filed this action and has not sought payment from other structures in Lake Union waterways even though it is aware of their existence.

¶31 DNR argues that the trial court erred in finding that Northlake was not trespassing, that the facts tended to show that its counterclaim was brought in retaliation for Northlake's action, and that DNR could take future resource management actions against Northlake only if its actions are consistent with its handling of similarly situated property and not retaliatory.

A. Trespass and Compensation

¶32 RCW 79.02.300(1) prohibits trespass on state-owned public lands and makes those who use or occupy public lands without authorization liable to the state for damages. Public lands include aquatic lands and thus waterways. RCW 79.02.010(5), (9); RCW 79.93.010. DNR is authorized to investigate and prosecute trespasses under RCW 79.02.300(3). A trespasser is liable for treble damages unless the trespasser proves that it did not know or have reason to know that it lacked authorization. RCW 79.02-.300(1).

¶33 Northlake has not obtained a permit from DNR for its use of Waterway 23. Thus, Northlake is

trespassing in Waterway 23. However, the trial court found that Northlake's use of the waterway was with DNR's implied permission. Substantial evidence supports this finding. Northlake's owner regularly contacted DNR about waterway permits, and DNR was aware of the Northlake structures. DNR's manager met with and talked to Northlake's owner about waterway permits and noted that to Northlake's credit, it was willing to sign a lease where other users were resistant. DNR did not seek either payment from Northlake or removal of the structures. Until DNR filed its counterclaims in this action, it acquiesced in Northlake's use of the waterway.[12]

¶34 Northlake has a city permit but does not have a DNR permit and has not applied for a federal permit. In order to lawfully use Waterway 23, Northlake must obtain both a federal permit and a permit from DNR. Northlake has submitted as additional authority 33 C.F.R. § 330.3(b). This regulation provides that structures completed before December 18, 1968, are covered by nationwide federal permits, provided that there is no interference with navigation. The trial court found that Northlake "has constructed and maintained structures on the state's aquatic lands in Waterway 23 for more than 30 years." This finding is insufficient to determine whether or not Northlake's structures are covered by a nationwide federal permit under 33 C.F.R. § 330.3(b). We remand to the trial court to make a factual finding of whether Northlake's use is covered by nationwide permits under this regulation.

¶35 Regardless of whether Northlake's use is covered by 33 C.F.R. § 330.3(b), DNR is entitled to collect trespass damages under RCW 79.02.300. Because DNR has given Northlake implied permission to use the waterway, it is equitably estopped from seeking treble damages under the statute until DNR revoked its implied permission by giving

---

[12] DNR's failure to act does not grant Northlake any continuing right to use the waterway because adverse possession and prescriptive easements do not lie against the state. *See* RCW 7.28.090; *Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 762, 695 P.2d 996 (1985). Northlake does not claim such a right as to future use.

Northlake notice of its counterclaims. However, DNR is entitled to collect fair market rental value plus interest for this same period. *See Draper*, 117 Wn.2d at 318, 325. DNR has authority to collect trespass damages beginning the date the notice of counterclaims was given as well as authority to abate Northlake's use if a permit is not obtained.[13]

¶36 We remand to the trial court to determine whether the federal regulation already provides federal authorization for Northlake's use or whether a federal permit must be obtained, and to determine the appropriate rent and trespass damages, together with interest on those amounts, payable by Northlake.

### B. Retaliation and Future Enforcement

¶37 DNR argues that the trial court erred in finding that the timing of DNR's counterclaims tended to establish a prima facie case that DNR was retaliating against Northlake as a result of Northlake's suit.[14] DNR further challenges the trial court's conclusion that DNR could not act against Northlake unless its action is consistent with its treatment of similarly situated parties and not motivated by retaliatory reasons.

¶38 Findings of fact will not be overturned if supported by substantial evidence. "Substantial evidence ex-

---

[13] Northlake argues that DNR has waived its claim for treble damages by failing to assign error or make an argument supporting a claim of treble damages. However, the trial court did not enter any finding or conclusion on this issue. Rather, its conclusion that Northlake did not trespass precluded any award of trespass damages. Whether treble or single damages are appropriate is an issue for the trial court to resolve on remand.

DNR has dropped its claim for treble damages prior to the filing of its counterclaim. We note, however, that DNR also willingly limited its trespass damages to those incurred in the three years prior to its filing of the counterclaim.

[14] The finding states:

This timing tends to establish a prima facie case that DNR's enforcement action was taken in retaliation for Northlake's exercise of its rights to free speech and to petition for redress. DNR has failed to establish that it would have taken the enforcement action regardless of Northlake's protected conduct. [NOTE: Having made this finding, in light of the limited evidence and briefing presented, the Court is entering no corresponding conclusion of law.]

ists when the record contains evidence of sufficient quantity to persuade a fair-minded, rational person that the declared premise is true." *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 112, 937 P.2d 154, 943 P.2d 1358 (1997). The finding that the timing of DNR's counterclaims tends to establish a prima facie case that DNR took its action in retaliation for Northlake's exercise of its rights to free speech and to petition for redress is supported by substantial evidence. DNR could have brought its enforcement action prior to Northlake's suit. DNR could have required Northlake to pay rent and obtain a permit rather than to vacate the waterway. The finding only says "tends to establish." DNR argues that it was required to file its counterclaim because it was compulsory under CR 13(a). DNR may be correct. But whether or not the claim was compulsory, there was sufficient evidence to support the finding that the timing of DNR's enforcement action "tends to establish" retaliatory action.

¶39 DNR argues that although the court stated it did not enter a corresponding conclusion of law, it did so when it revised conclusion of law 4. The court concluded that its "ruling does not have any preclusive effect as to future resource management actions by DNR so long as those actions are consistent with its handling of similarly situated property owners and are not taken for retaliatory reasons."

¶40 That a governmental agency takes enforcement action against one of many parties violating a statute or ordinance does not deny that party equal protection "absent the use of an arbitrary or prohibited ground to determine specific instances of enforcement." *Somer v. Woodhouse*, 28 Wn. App. 262, 267, 623 P.2d 1164 (1981). Moreover, without a deliberate discriminatory purpose on the part of the agency, selective enforcement does not render the agency's action arbitrary and capricious. *See City of Burlington v. Kutzer*, 23 Wn. App. 677, 682, 597 P.2d 1387 (1979). Similarly, "an administrative agency's acquiescence at an earlier time does not estop it from enforcing

the law at a later date." *Longview Fibre Co. v. Dep't of Ecology*, 89 Wn. App. 627, 636-37, 949 P.2d 851 (1998).

¶41 The trial court's conclusion only summarizes these requirements for valid agency action. The conclusion does nothing to diminish DNR's future resource management power. DNR retains its full statutory authority to issue permits and to abate improper uses. The trial court's conclusion only states that Northlake is entitled to fair treatment by DNR in its enforcement actions. There is no error in this conclusion.

### C. Attorney Fees

¶42 DNR and Northlake both seek attorney fees under RCW 79.02.300. That statute provides that the trespasser "is liable for reimbursing the state for its reasonable costs, including but not limited to . . . reasonable attorneys' fees and other legal costs." We award attorney fees and costs to DNR on the trespass claim.[15] The amount of this award shall be determined by the trial court.

## CONCLUSION

¶43 We hold that Northlake did not fail to exhaust its remedies or otherwise improperly bring its action. We hold that chapter 79.93 RCW does not prohibit the permit issued in this case and that the permit was issued consistent with state law. We do not decide whether the trial court properly granted the statutory writ to review the city's street use permit because that question is moot. We affirm the trial court's grant of summary judgment to DNR and the city. We reverse the trial court's conclusion that Northlake was not trespassing in the waterway. We remand to the trial court

---

[15] We note that even if Northlake prevailed on the trespass claims, it would not be entitled to an award of fees or costs under this statute. The legislature has made a clear distinction between unilateral and bilateral attorney fee clauses. Some statutes allow attorney fees to the "prevailing party," while others allow fees to just one side of the dispute. *Compare* RCW 59.23.040 (allowing fees to the prevailing party) *with* RCW 4.28.185(5) (allowing fees to successful out-of-state defendants). The legislature's decision to expressly limit attorney fee awards under RCW 79.02.300 to the state precludes an award of such fees to Northlake.

for further fact-finding, to determine the amount of damages on the trespass claim, and to award fees and costs.

GROSSE and BAKER, JJ., concur.

Reconsideration denied August 17, 2006.

