Melnick, J.
¶40 (dissenting) — I respectfully dissent from the majority’s interpretation of the term “owner or operator” as it is used in RCW 70.105D.020.1 would therefore affirm the trial court’s determination that the Department of Natural Resources (DNR) is neither an owner nor an operator of the facility under the Model Toxics Control Act (MTCA). DNR is the manager of the state-owned aquatic lands.
¶41 In coming to this conclusion, I agree with the majority that we utilize the plain meaning of the statutes in question. In pertinent part, the following statutes are critical to the analysis.
I. Statutes
A. MTCA - Chapter 70.105D RCW
“Facility” means (a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, im-poundment, ditch, landfill, storage container, motor vehicle, *425 rolling stock, vessel, or aircraft, or (b) any site or area where a hazardous substance, other than a consumer product in consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be located.
RCW 70.105D.020(8).
¶42 “ ‘Owner or operator’ means: (a) Any person with any ownership interest in the facility or who exercises any control over the facility.” RCW 70.105D.020(22).
¶43 “ ‘Person’ means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, state government agency, unit of local government, federal government agency, or Indian tribe.” RCW 70.105D.020(24).
B. Public Lands - Title 79 RCW
¶44 Pursuant to RCW 79.02.010 the aquatic lands at issue in this case are owned by the State. “ ‘Aquatic lands’ means all tidelands, shorelands, harbor areas, and the beds of navigable waters.” RCW 79.105.060(1). Management of the aquatic lands is delegated to DNR. RCW 79.105.010, .210(4).
¶45 The legislature finds that state-owned aquatic lands are a finite natural resource of great value and an irreplaceable public heritage. RCW 79.105.010. The legislature recognizes that the State owns these aquatic lands in fee and has delegated to the department the responsibility to manage these lands for the benefit of the public. RCW 79.105.010.
¶46 RCW 79.105.210(4) states, “The power to lease state-owned aquatic lands is vested in the department, which has the authority to make leases upon terms, conditions, and length of time in conformance with the state Constitution and chapters 79.105 through 79.140 RCW.”
*426 II. DNR Is Not An Owner Of The Facility Because It Does Not Have An Ownership Interest In The Facility
¶47 Although the majority does not distinguish between the terms “owner” and “operator,” the plain language of the statute at issue clearly differentiates between the two.
¶48 An “ ‘owner’ ” is “[a]ny person with any ownership interest in the facility.” RCW 70.105D.020(22)(a). An “ ‘operator’ ” is any person “who exercises any control over the facility.” RCW 70.105D.020(22)(a). As the majority points out, the parties do not dispute that the State owns the property on which the facility is located. See RCW 79.105-.010. Under MTCA, the State is not a person, but DNR is. RCW 70.105D.020(24). The majority, however, holds that DNR has an ownership interest in the site and is not a mere manager. I disagree.
¶49 DNR is a creature of statute and derives its power from the legislature. “An agency may exercise only those powers conferred by statute and cannot authorize action in absence of statutory authority.” Northlake Marine Works, Inc. v. Dep’t of Nat. Res., 134 Wn. App. 272, 282, 138 P.3d 626 (2006). “DNR has been granted authority to manage state aquatic lands.”Northlake Marine Works, Inc., 134 Wn. App. at 287.
¶50 In coming to this conclusion, I am mindful that the legislature has emphasized, “The purpose of RCW . . . 79.105.010 through 79.105.040 is to articulate a management philosophy to guide the exercise of the State’s ownership interest and the exercise of the department’s management authority, and to establish standards for determining equitable and predictable lease rates for users of state-owned aquatic lands.” RCW 79.105.020. The legislature specifically says that the State has an ownership interest in aquatic lands and DNR has management authority. RCW 79.02.010(1); RCW 79.105.210.
¶51 I would note that although MTCA does not define “ownership interest,” the legislature has defined this term *427 in a wholly different context. It is the only definition of “ownership interest” I could find in our statutes. In RCW 2.48.180(l)(c), the legislature, in part, defined “‘[o]wnership interest’ ” as “the right to control the affairs of a business.” I find this definition to be persuasive in the current context.
¶52 DNR, a state agency, is in fact the manager of the aquatic land but does not have an ownership interest in the facility.[16]
III. DNR Is Not An Operator Of The Facility Because It Does Not Exercise Any Control Over The Facility
¶53 It is equally clear that DNR is not the “operator of the facility.” It does not exercise control of the facility or the site. While DNR manages the site on behalf of the State, it does not exercise control of the facility. RCW 79.105.010, .060(20).
¶54 This recognition seemed obvious to DNR and the Department of Ecology (Ecology). In December 1992, Ecology and DNR executed a memorandum of understanding (MOU). It recognized that aquatic lands are “owned by the people of the State and administered by the Washington Department of Natural Resources. ... As the public’s custodian of those lands, DNR has a vital interest in ensuring that they are free of contamination.” Clerk’s Papers (CP) at 283.
¶55 This MOU articulated the difference between operating the facility and managing it. DNR may have reasonable defenses to MTCA liability, which “may apply to situations where DNR did not: control the finances of the facility, manage the employees of the facility, manage the daily business operations of the facility, or have authority to daily operate/maintain environmental controls at the facil *428 ity.” CP at 289. This language in the MOU evinces Ecology’s recognition that DNR’s role as a manager was to act as the public’s custodian of the land, and that it would not be liable under MTCA unless it played an active role in controlling the operation of the facility. In this case, it must be remembered that Ecology only named DNR as a potentially liable person.
¶56 By analogy, and assuming the same definitions apply, an owner of rental property can have an agent who finds renters for the property and signs the leases. If that agent signs a lease setting conditions for the rental property, including authorizing the renter to have a dog, and that dog subsequently bites somebody, under the majority’s reasoning, the agent is potentially liable because it operated the rental property. Such a conclusion is at odds with our jurisprudence.
¶57 Both Taliesen Corp. v. Razore Land Co., 135 Wn. App. 106, 128, 144 P.3d 1185 (2006), and Unigard Insurance Co. v. Leven, 97 Wn. App. 417, 428, 983 P.2d 1155 (1999), take a similar approach. Both cases interpreted MTCA and, because it was modeled on the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA),[17] used the federal law as persuasive authority in determining how we should interpret our state law. They relied on interpretations of CERCLA, including United States v. Bestfoods, 524 U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998), which it found persuasive.
¶58 In both Taliesen and Unigard, we adopted the CERCLA liability standard that “[w]ith few exceptions,” courts have been unwilling to impose CERCLA liability upon an nonowner of the property if the party did not participate in, or actually exercise control over, the operations of the facility. Unigard, 97 Wn. App. at 429; Taliesen, 135 Wn. App. at 127. In Taliesen, we said, “The persuasive *429 authority of the federal cases demonstrates that the key word in our state statute is ‘control’, not ‘any.’ ” 135 Wn. App. at 128. The contractor who worked on the property did not have “ ‘any control’ in the decision-making sense intended by [CERCLA]. The trial court properly concluded that [he] did not have operator liability.” Taliesen, 135 Wn. App. at 128.
¶59 The majority says these cases were wrongly decided. However, it is axiomatic that “the Legislature is presumed to know the existing state of the case law in those areas in which it is legislating.” Price v. Kitsap Transit, 125 Wn.2d 456, 463, 886 P.2d 556 (1994); Wynn v. Earin, 163 Wn.2d 361, 371, 181 P.3d 806 (2008); Osborn v. Grant County, 130 Wn.2d 615, 623, 926 P.2d 911 (1996). In addition, the “prior judicial use of a term will be considered since the legislature is presumed to know the decisions of this court.” In re Marriage of Gimlett, 95 Wn.2d 699, 702, 629 P.2d 450 (1981).
¶60 Here, DNR signed the lease which established permitted uses for the property; however, DNR did not exercise control over the facility. Because DNR did not have an ownership interest in or control over the operations of the facility, I respectfully dissent.
Review granted at 188 Wn.2d 1002 (2017).

 Some amici cite to Oberg v. Department of Natural Resources, 114 Wn.2d 278, 279, 787 P.2d 918 (1990), for authority. However, in that case, a statute utilized in analyzing the issues specifically defined DNR as an owner of forestland.

 42 U.S.C. § 9601 and its 1986 reenactment, the Superfimd Amendments and Reauthorization Act of 1986. Seattle City Light v. Dep’t of Transp., 98 Wn. App. 165, 170 & n.1, 989 P.2d 1164 (1999).