19 P.3d 469 (2001)
105 Wash.App. 168
In re Robert Gary COMBS, Appellant, and
Lisa Ann Combs, Respondent.
No. 18872-8-III.
Court of Appeals of Washington, Division 3, Panel Two.
March 8, 2001.
*470 Mary E. Schultz, Spokane, for Appellant.
Gary R. Stenzel, Stenzel & Price, Spokane, for Respondent.
KATO, J.
Robert G. Combs appeals superior court orders naming his former wife, Lisa A. Combs, the primary residential parent of the couple's two sons. He contends the court improperly refused to consider Ms. Combs' wish to move to New York with the children. We reverse and remand.
The Combses were married in 1989. They have two children, Christopher (born in 1993) and Zachary (born in 1995). Mr. Combs filed a petition to dissolve the marriage in 1997. In 1998, the court entered a temporary parenting plan naming Ms. Combs as the primary residential parent.
Within the next few months, each parent moved for contempt orders against the other. The court held that there were no grounds for holding Mr. Combs in contempt, but that Ms. Combs had failed to comply with the temporary parenting plan by removing the children from school for two days and taking them on a 26-day vacation out of the state without informing Mr. Combs.
The court also appointed Dr. Clay Jorgensen, a psychologist, as guardian ad litem to investigate what it called "serious ... allegations which, if true, could have harmful consequences for the parties' minor child(ren)." Clerk's Papers at 42. Dr. Jorgensen recommended that the children be placed primarily with Mr. Combs. He viewed both parents as being "essentially good parents," but he was concerned about Ms. Combs' expressed desire to take the children with her to live in New York. Report of Proceedings (RP) at 136. Dr. Jorgensen said such a move would result in "a serious loss to these children, of a relationship with their Father." RP at 136.
The matter went to trial in 1999. With respect to the custody issues, the court found:
e. The mother has alleged that the father has engaged in excessive alcohol use. No such use has been demonstrated by the evidence. The evidence indicated only that a very few people had seen the father drinking, and this was generally at neighborhood or company social events; in most cases, both husband and the wife were mutually drinking at those times.
f. The mother has raised the issue of the children having to listen to music that is harmful or detrimental while in the father's care, with a band named Ramstein. The lyrics to this music are in German, and there is no evidence that the children even understand such lyrics.
g. The mother alleged that the children have an interest in listening to Marilyn Manson. Any such interest does not appear to be due to the father's taste and/or influence.
h. The father has alleged emotional and mental instability on the part of the mother. Dr. Debra Brown found that the mother's mental stability should not effect [sic] the parenting plan determination.
*471 i. The mother's diary has demonstrated that that was a place where she took solace, and she expressed her unhappiness.
j. The credit card charges made by the mother were for community expenses, and are thus not an issue concerning the mother's judgment.
k. Although Erika Combs has attested that she heard [Ms. Combs] threaten to kill [Mr. Combs], she had not earlier testified as to such threats in her declarations to the court at the inception of this action. Such information would have been vitally important concerning primary placement, and this court must find that if such threats had occurred, then they would have been raised at that time.
l. The mother's statements about wishing harm to [Mr. Combs] on the phone to her friends are not unusual. It is not unusual to make such statements to friends, and does not present a real threat.
m. [Mr. Combs] primarily presented his family members and co-workers as lay witnesses, and the mother presented neighbors. The neighbors had extended contact both in observing the mother in the home, and allowing the mother to watch their own children.
The father is concerned about supervision, however the evidence is that the only injuries experienced by the children were experienced while the children were in his care with respect to the go-kart and boomerang incidents.
o. This court is concerned that the child is allowed to carry a knife.
p. The father argues that the mother is needy, yet he is the one who is presently residing with his parents.
q. The [guardian ad litem's] recommendation must be discounted as he believed that the Petitioner [sic] had taken two MMPI tests, as opposed to one test. The husband's MMPI II was actually more defensive than was the wife's. The [guardian ad litem's] associate primarily did the interviews of other witnesses. Dr. Jorgensen never made home visits, and thus the issue of the safety of the home was not addressed.
r. Both parents are capable parents, and a case [can] be made for the children to be placed with either parent as their primary residential parent.
s. The issue in this matter boiled down to whether the mother would move out of state per the [guardian ad litem], and this court cannot as a matter of law make a decision based upon the potential that the mother may move. This court cannot place restrictions on a parent's ability to move.
t. The father has traits that make him a good father. However, the mother has been the primary parent through the pendency of this action, and the children appear to be doing well.
u. This court should designate the mother as the primary residential parent, and the father should receive liberal time with his children. This court accepts that it is important to the children to have substantial time with their father, and that a reduction in that time would be detrimental to them.
Based on these findings, the court entered a final parenting plan placing the children primarily with Ms. Combs but providing for liberal visits with Mr. Combs and equal time with the children during the summer and other school vacations.
Mr. Combs has appealed. He assigns error to findings (q), (s), and (t) above.
The dispositive issue involves the trial court's refusal to consider Ms. Combs' desire to move to New York as a factor in awarding custody of the children. A trial court's determination regarding residential placement of children under The Parenting Act of 1987, chapter 26.09 RCW, is reviewed for abuse of discretion. In re Marriage of Littlefield, 133 Wash.2d 39, 46, 940 P.2d 1362 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Id. at 46-47, 940 P.2d 1362. A *472 decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Id. at 47, 940 P.2d 1362.
Mr. Combs contends the court's decision here was based on untenable reasons because it applied an incorrect legal standard. Specifically, he argues the court incorrectly concluded it was prohibited from considering Ms. Combs' desire to move the children to New York. In fact, he contends, the court was required to consider this fact in evaluating the emotional and developmental needs of the children.
The trial court's reluctance to consider Ms. Combs' relocation plans apparently was based on Littlefield, in which the Supreme Court held that chapter 26.09 RCW generally did not authorize a court, as part of a parenting plan, to limit a parent's ability to relocate.[1] The Supreme Court reaffirmed this conclusion in In re Marriage of Pape, 139 Wash.2d 694, 696, 989 P.2d 1120 (1999), holding that a primary residential parent may seek a "minor" modification of a parenting plan to facilitate a geographic relocation, subject to the other parent's demonstration that the reasons for the move are not bona fide or that the move will be detrimental to the child "beyond the normal distress a child suffers due to travel, infrequent contact with a parent, or other hardships which predictably result from a move following dissolution."[2]
However, the Pape court also recognized the distinction between the standards for adopting the initial parenting plan and the standards for subsequent minor modifications of the plan:
The Court of Appeals ... understandably confuses the "best interests" standard considered in making an initial primary residential placement with the standard applicable to minor modifications. A trial court making an initial placement of the child considers many factors that impact the child's life in order to determine the best interests of the child. See RCW 26.09.187(3). A trial court hearing a modification action, on the other hand, presumes the best interests of the child require the primary placement remain intact. RCW 26.09.260(1). In a modification action the presumption is in favor of "custodial" continuity, not environmental stability or environmental continuity. It is only where the nonprimary residential parent overcomes that presumption by showing continued placement with the other parent is not in the child's best interest that the principal residence of the child may be changed. In a minor modification, the decision does not so dramatically impact the child's life. Because the best interests of the child with respect to the primary residential placement have already been determined, the court, in a minor modification, need not reexamine the placement to consider whether it continues to be in the child's best interests.
Pape, 139 Wash.2d at 715, 989 P.2d 1120.
By referring to RCW 26.09.187(3), the court implicitly recognized that, in making *473 the initial placement, the location of the child's residence will have an important effect on his or her best interests. The statute provides for consideration of the following factors at that state of the proceedings:
(i) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
(iii) Each parent's past and potential for future performance of parenting functions;
(iv) The emotional needs and developmental level of the child;
(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
RCW 26.09.187(3)(a).
Relocation of a child to a different state certainly will affect his or her physical surroundings and thus would be directly relevant to factor (v). Depending on the circumstances, such a move also may be relevant to other factors, particularly (iii) and (iv). A plan to relocate a child to another state thus would be directly relevant to a determination of the child's best interests.
Here, despite evidence of Ms. Combs' desire to relocate the children to New York, the trial court incorrectly concluded it was not permitted to consider it. The decision thus was based on an untenable reason and was an abuse of discretion. Its orders are reversed on that ground.
As a guide to the trial court on remand, we also will consider another issue raised by this appeal. That is the trial court's apparent consideration of Ms. Combs' success as a temporary residential parent as a factor in naming her the permanent primary residential parent. Findings of fact (r), (s), and (t) (quoted above) indicate the court believed that either Mr. or Ms. Combs would be appropriate as a primary residential parent. The findings thus suggest the court concluded its analysis of the appropriate factors was essentially a "tie." Finding of fact (t) further suggests that the court broke the "tie" by relying on the fact that Ms. Combs had performed well as the primary residential parent during the pendency of the temporary parenting plan.
In In re Marriage of Kovacs, 121 Wash.2d 795, 809, 854 P.2d 629 (1993), the Supreme Court held the Parenting Act "did not intend to create any presumption in favor of the primary caregiver but, to the contrary, intended to reject any such presumption." To the extent the trial court's finding applies a presumption in favor of Ms. Combs on the basis of her status as the temporary residential parent, it clearly was not based on tenable reasons and was an abuse of discretion.
Ms. Combs argues, however, that the finding was not an application of a presumption in her favor, but merely was a determination that she was capable of being a good parent. The difficulty with this argument, however, is that the court's findings do not relate specifically to any of the factors identified by the Legislature as relevant to the determination. See RCW 26.09.187(3)(a). Without an examination of those statutory factors, it is impossible to determine on what basis the court ultimately concluded Ms. Combs should be the primary residential parent. The result is that the court's decision was not based on tenable reasons and was an abuse of discretion.
Arguably, the court improperly applied a presumption in favor of the status quo in violation of Kovacs. Even if it did not, however, its failure to examine the statutory factors relevant to its determination was an abuse of discretion.
Finally, we address Ms. Combs' request for attorney fees on appeal. RCW *474 26.09.140 authorizes an award of reasonable costs and attorney fees on appeal after considering the parties' financial resources. In this case, the trial court concluded the parties should bear their own costs and attorney fees. Ms. Combs does not contend her financial circumstances have changed since that time. She thus has failed to provide a basis for fees under RCW 26.09.140. See Schumacher v. Watson, 100 Wash.App. 208, 216, 997 P.2d 399 (2000).
Ms. Combs also seeks attorney fees because of what she contends is a "retaliatory" and "frivolous" appeal. Brief of Respondent at 16. A court may award fees because of one party's intransigence, In re Marriage of Foley, 84 Wash.App. 839, 846, 930 P.2d 929 (1997), or because the party has pursued a frivolous appeal, RAP 18.9(a). This opinion has demonstrated the appeal is not frivolous, and there is no support in the record for Ms. Combs' allegation Mr. Combs was intransigent or filed the appeal as a retaliatory tactic.
The request for attorney fees is denied.
Reversed and remanded.
WE CONCUR: BROWN, A.C.J., SCHULTHEIS, J.
NOTES
[1] In Littlefield, 133 Wash.2d at 54-55, 940 P.2d 1362, the court recognized that RCW 26.09.191(3) permitted limitations based on parental conduct that may have an adverse effect on a child's best interests. However, the court interpreted this provision as requiring "more than the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage." Id. at 55, 940 P.2d 1362.
[2] After the Pape decision (but before the trial court's decision in this case), the Legislature amended RCW 26.09.260 to provide:

"(6) The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child. The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order." See Laws of 2000, ch. 21, § 19.