# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| POPE RESOURCES, LP, a Delaware limited partnership; OPG PROPERTIES, LLC., a Washington limited liability company,<br><br>Appellants,<br><br>v.<br><br>THE WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, a Washington state agency,<br><br>Respondent. | No. 47861-7-II<br><br><br><br>PUBLISHED OPINION |

LEE, P.J. — Pope Resources LP and OPG[1] (collectively, Pope) sued the Department of Natural Resources (DNR) for contribution of cleanup costs for contamination at the Port Gamble Bay and Mill Site (collectively, the Site) under the Model Toxic Control Act (MTCA).[2] The superior court granted summary judgment to DNR based on DNR's argument that it was not liable as an "owner or operator" under MTCA. Pope appeals the summary judgment order dismissing the action against DNR. We hold that DNR is an "owner or operator" under MTCA and reverse the superior court's summary judgment order.

---

[1] OPG was formerly known as Olympic Property Group LLC.

[2] 70.105D RCW.

FACTS

A.    LEASES TO POPE & TALBOT

In 1893, the State of Washington sold some tidelands at Port Gamble, which Pope & Talbot Inc. (P&T) eventually came to own, and where P&T operated a lumber mill.[3] In 1974, Washington State, "acting by and through" DNR, leased aquatic lands just west of the mill to P&T for log storage.[4] Clerk's Papers (CP) at 103. That lease, among other things, listed the permitted uses on the site as log storage, rafting, and booming. The lease (1) required specific methods of log booming and prohibited certain other methods, like "[f]ree rolling of logs"; (2) placed limitations on the type and assembly of log rafts; (3) provided that P&T could not remove valuable material without prior consent, fill any lands, or allow debris or refuse to accumulate; (4) prohibited assignment or other transfer of the lease without DNR's prior consent; and (5) allowed DNR to remove any improvements that were made to the property without proper consent and to enter the property "at all reasonable times." CP at 104-05.

In 1979, DNR executed another lease with P&T[5] that contained substantially similar terms, restricting the permitted uses and allowing DNR access to the premises. In 1991,[6] DNR again executed another lease with P&T. Because P&T had been occupying lands outside the expiring lease, DNR expanded the property covered under the 1991 lease. In internal notes relating to the

---

[3] In 1975, DNR also executed a lease with P&T for a waste outfall from the lumber mill.

[4] The former mill and leased aquatic lands neighboring the mill comprise the Site.

[5] As with the 1974 lease, the 1979 lease was between Washington State, "acting by and through" DNR, and P&T.

[6] The 1991 lease was backdated to 1989.

1991 lease, DNR noted that P&T had added pilings to the water and that the area was "highly suitable" for log storage. CP at 123. Ultimately, P&T's lease expired in 2001.[7]

B.      SITE CONTAMINATION AND LIABILITY

The Department of Ecology (Ecology) determined that the activities at the Site between 1853 and 1995 had resulted in the release of hazardous substances. Ecology found that activities at the Site, such as log storage and rafting, and the pilings that facilitated storage and transportation of logs, resulted in contamination at the Site.

Ecology named Pope[8] and DNR as "potentially liable persons" under MTCA. CP at 75. Ecology issued a cleanup action plan, and Pope and Ecology entered into an agreement to implement the plan. Pope took remedial actions to clean up the Site.

DNR has referred to itself as the owner of the Site. In a lease summary, DNR noted that "[a]ctual ownership lines in the mill area are questionable and it is possible that DNR may own part of the mill site." CP at 148. Further, in internal documents regarding issues at the Site, DNR stated, "[W]e will need to inform Ecology of our ownership and interests at [the Port Gamble Bay] site immediately." CP at 140; *accord* CP at 153 (noting in an internal e-mail that it (DNR) was the owner of the Site). DNR also admitted that it has a share of liability for remedial actions at the Site for the leased area. Despite this, DNR did not enter into any agreement to clean up the Site.

Pope sued DNR for contribution for cleanup costs under RCW 70.105D.080. DNR asserted that it was not among the categories of persons liable under MTCA. Pope moved for

---

[7] In 1985, P&T created Pope Resources, and transferred its interests in the Port Gamble Bay to Pope. Pope subsequently formed OPG to manage its real estate holdings. In 2007, P&T filed for bankruptcy.

[8] Pope notes that initially, Ecology named P&T a potentially liable person, but P&T was no longer liable after P&T entered bankruptcy. P&T's liability is not at issue in this appeal.

summary judgment, arguing that DNR was liable under MTCA because DNR is an "owner and operator" of the Site. DNR responded and filed a countermotion for summary judgment, arguing that it is not an "owner" or "operator." CP at 229-30. Both parties agreed that the underlying facts are undisputed and that the only issue is whether DNR is an "owner" or "operator" of the Site.

The superior court granted DNR's summary judgment motion and dismissed the case with prejudice.[9] Pope appeals.

ANALYSIS

We review a superior court's order granting summary judgment de novo, performing the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate if we find that there is no genuine issue of material fact, construing the facts in favor of the nonmoving party. *Van Scoik v. Dep't of Nat. Res.*, 149 Wn. App. 328, 332, 203 P.3d 389 (2009).

A.    MTCA—GENERAL PROVISIONS

In 1988, Washington voters approved MTCA (chapter 70.105D RCW).[10] *Asarco, Inc. v. Dep't of Ecology*, 145 Wn.2d 750, 754, 43 P.3d 471 (2002). MTCA's declared policy is to hold parties accountable for "irresponsible use and disposal of hazardous substances." *See* RCW

---

[9] Pope moved for reconsideration of the superior court's order, which was also denied. In Pope's assignment of error, it states that the superior court erred in denying its motion for reconsideration. However, it does not address the motion for reconsideration in its issue statement or offer other argument or authority. Accordingly, we do not address the superior court's denial of Pope's motion for reconsideration. **RAP 10.3(a)(6)**; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[10] MTCA was enacted through the initiative process, and we apply the same general rules of statutory construction in interpreting initiatives. *City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 97, 758 P.2d 480 (1988).

70.105D.010(2). The legislature provided that MTCA is to be liberally construed. RCW 70.105D.910.

MTCA authorizes Ecology to identify "potentially liable persons," who include the current and former property owners or operators, polluters, and transporters of waste.[11] RCW 70.105D.040(1)(a), (b), (c), (d). MTCA holds liable the "owner or operator" of the facility in question, or any person who owned or operated the facility at the time the hazardous substances were released or disposed.[12] RCW 70.105D.040(1)(a), (b). Each liable person "is strictly liable, jointly and severally, for all remedial action costs and for all natural resource damages resulting from the releases or threatened releases of hazardous substances." RCW 70.105D.040(2). Liable persons have a statutory right to seek contribution from others potentially liable under the statute. RCW 70.105D.080.

An "owner or operator" under MTCA is "[a]ny person with *any ownership interest* in the facility or who *exercises any control* over the facility." RCW 70.105D.020(22) (emphasis added). Thus, to be liable as an "owner or operator," one must be a "person," as defined under RCW 70.105D.020(24). MTCA defines "person" as an "individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, *state government agency*, unit of local

---

[11] Under MTCA, "'Potentially liable person' means any person whom the department finds, based on credible evidence, to be liable under RCW 70.105D.040. The department shall give notice to any such person and allow an opportunity for comment before making the finding, unless an emergency requires otherwise." RCW 70.105D.020(26).

[12] "'Facility' means (a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, vessel, or aircraft, or (b) any site or area where a hazardous substance, other than a consumer product in consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be located." RCW 70.105D.020(8).

government, federal government agency, or Indian tribe." RCW 70.105D.020(24) (emphasis added).

Neither party disputes that a state agency is a person and that the Site is a facility. The question here is whether DNR is an "owner or operator" under MTCA.

B.    STATUTORY INTERPRETATION

Whether DNR is liable under MTCA as an "owner or operator" of the Site is a question of statutory interpretation, which we review de novo. *PacifiCorp Envtl. Remediation Co. v. Dep't of Transp.*, 162 Wn. App. 627, 662, 259 P.3d 1115 (2011). Our goal in interpreting the statute is to ascertain and carry out the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). To do so, we first look to the plain language of the statute. *Id.* "When the legislature has expressed its intent in the plain language of a statute, we cannot substitute our judgment for the legislature's judgment." *Protect the Peninsula's Future v. Growth Mgmt. Hearings Bd.*, 185 Wn. App. 959, 972, 344 P.3d 705 (2015); *accord Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002) ("An unambiguous statute is not subject to judicial construction."), *cert. denied*, 538 U.S. 1057 (2003).

To evaluate the plain language, we consider the text of the provision in question, the context of the statute in which the provision is found, and related statutes. *Jametsky*, 179 Wn.2d at 762. Legislative definitions in the statute control, but in the absence of a statutory definition, courts may reference a standard dictionary to give a term its plain and ordinary meaning. *Fraternal Order of Eagles*, 148 Wn.2d at 239. We do not add language to an unambiguous statute under the guise of interpretation. *In re Estate of Mower*, 193 Wn.2d 706, 713, 374 P.3d 180 (2016).

"'A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable.'" *Fraternal Order of*

*Eagles*, 148 Wn.2d at 239-40 (quoting *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002)). "This court is not 'obliged to discern any ambiguity by imagining a variety of alternative interpretations.'" *Id.* at 240 (quoting *Keller*, 143 Wn.2d at 277).

C.      "OWNER OR OPERATOR" OF THE SITE

DNR argues that it is not an "owner or operator" of the Site under MTCA because the State owns the aquatic lands within the Site.[13] We disagree and hold that DNR is liable under MTCA as an "owner or operator" of the Site based on DNR's ownership interest in the aquatic lands within the Site.

1.      Any Ownership Interest

The parties do not dispute that the State of Washington owns the aquatic lands within the Site. Although DNR admits it has the right to manage the aquatic lands within the Site, DNR asserts that it does not have a "bundle of rights" associated with property ownership because it only has the powers given to it by the legislature. Br. of Resp't at 17. Thus, DNR argues that it cannot be an owner because the State, not DNR, is the owner. Pope argues that the State's fee ownership does not preclude DNR from holding "any ownership interest" under MTCA. We agree with Pope.

RCW 70.105D.020(22) broadly defines "owner" as "[a]ny person with *any ownership interest* in the facility." "Any" is defined as "[o]ne or some, regardless of sort, quantity, or number"; "[a]ny quantity or part"; and "[t]o any degree or extent." WEBSTER'S II NEW COLLEGE DICTIONARY 51 (1999). "Ownership" is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." BLACK'S LAW

---

[13] DNR's argument is contrary to the position taken in its own documents where it acknowledges that it owns the Site, and that it needed to inform Ecology of its ownership and interests at the Site.

DICTIONARY 1138 (8th ed. 2004). And "interest" is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property." BLACK'S LAW DICTIONARY 828 (8th ed. 2004).

The plain language of MTCA does not limit liability to persons with an ownership interest in fee simple. Rather, the plain language provides that a person legally having some of the "bundle of rights" to use, manage, or possess the property is liable.

Here, the legislature has expressly delegated to DNR the responsibility to manage the aquatic lands within the Site. *See* RCW 79.105.010. DNR repeatedly asserted its right to manage the aquatic lands within the Site, and it has extensively exercised its right to manage the aquatic lands within the Site by dictating what activities are allowed and not allowed. Thus, based on the plain language of the statute and on DNR's statutory rights with regard to the property, DNR has an "ownership interest" in the Site.[14]

Washington's common law principles of property ownership support this plain language interpretation of "ownership interest." Property ownership in Washington has been determined by evaluating the "bundle of sticks" associated with property ownership and use, such as the right to use, possess, exclude, alienate, and control. *See Kiely v. Graves*, 173 Wn.2d 926, 936, 271 P.3d 226 (2012) ("Property is often analogized to a bundle of sticks representing the right to use, possess, exclude, alienate, etc."); *Lowe v. Rowe*, 173 Wn. App. 253, 264, 294 P.3d 6 (2012) ("Control over the land is part of the bundle of sticks associated with land ownership and use.").

---

[14] Even if the plain language of "any ownership interest" is ambiguous, the legislative documents support the conclusion that DNR is liable based on having an "ownership interest." For example, House Bill analysis provided: "The Department of Natural Resources is a potentially liable party and potentially responsible party on behalf of the state because it owns or manages the contaminated sites on state-owned aquatic lands." House of Representatives Bill Analysis, HB 2623, at 2 (Jan. 28, 2000).

Here, DNR undisputedly has statutory authority to manage the aquatic lands within the Site. *See* RCW 79.105.010. DNR has exercised its right to manage at the Site by leasing the aquatic lands, excluding others from the aquatic lands, and controlling the allowed uses on the aquatic lands. *See* CP at 217 (DNR noting that it evaluates proposed uses as "proprietary manager of state-owned aquatic lands").

Thus, DNR's authority includes those rights associated with an ownership interest. Accordingly, we hold that the statutory rights conferred on DNR by the legislature amount to "any ownership interest" in the Site.

2.      Exercise Any Control

DNR also argues that it did not exercise control over the polluting activities at the Site, and therefore, it cannot be held liable under MTCA as an "owner or operator." We disagree.

The plain language of RCW 70.105D.020(22) is unambiguous. As noted, a person who exercises *any* control over the facility is liable under MTCA. RCW 70.105D.020(22)(a); RCW 70.105D.040(1)(a). MTCA does not define "control," so we look to its usual and ordinary meaning. *Fraternal Order of Eagles*, 148 Wn.2d at 239. "Control" means: "To exercise authority or influence over: DIRECT." WEBSTER'S II NEW COLLEGE DICTIONARY 246 (1999); *accord* BLACK'S LAW DICTIONARY 353 (8th ed. 2004) ("To exercise power or influence over").

The legislature has granted DNR authority to manage the Site, including the authority to execute leases and determine appropriate uses of the property. *See* RCW 79.105.010. And DNR has exercised that authority here.

At the Site, DNR exercised its statutory authority by allowing the activity that led to the contamination. DNR controlled the permitted uses of the aquatic lands within the Site and expressly authorized Pope to use the leased aquatic lands for log storage, noting that "the area is

9

highly suitable for" log storage. CP at 123. DNR also expressly authorized log rafting and log booming. In the leases, DNR provided that specific methods had to be used for log booming and prohibited certain other methods of log booming, like "[f]ree rolling of logs." CP at 105. The leases also placed limitations on the type and assembly of log rafts. Ecology determined that contamination at the Site, in part, was related to the activities related to log storage, log rafting, and log booming. Thus, DNR has exercised control over the aquatic lands within the Site and is, therefore, an "owner or operator" under MTCA.

Moreover, DNR has repeatedly admitted that it manages the aquatic lands within the Site, holds management authority over those aquatic lands, and acts a land manager. "Manage" means: "1. To direct or control the use of. 2. a. To exert control over. b. To make submissive to one's authority, discipline, or persuasion." WEBSTER'S II NEW COLLEGE DICTIONARY 664 (1999); *accord* BLACK'S LAW DICTIONARY 979 (8th ed. 2004) (defining "general manager" as a person who administers or supervises the affairs of an organization, "who has overall control" of an organization). Therefore, based on DNR's own characterization of its role as a land manager, DNR controls the use of the aquatic lands within the Site and is, therefore, an operator under MTCA.[15]

DNR contends that state law requires that an operator under the MTCA must have active involvement in the operational decisions specifically related to pollution at the Site. The crux of DNR's argument is that it does not meet the definition of "operator" under CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act of 1980) and state court cases interpreting CERCLA.

---

[15] In discussing whether it has any ownership interest under MTCA, DNR repeatedly asserts that it is a land manager, has only management authority, and does not own the Site. But DNR does not reconcile that position with its claim that it is does not exercise any control over the Site.

In support of its contention, DNR cites *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 144 P.3d 1185 (2006) and *Unigard Insurance Co. v. Leven*, 97 Wn. App. 417, 983 P.2d 1155 (1999). *Taliesen*, citing *Unigard*, noted that "[b]ecause [MTCA] was heavily patterned after its federal counterpart [CERCLA], federal cases interpreting similar 'owner or operator' language in the federal act are persuasive authority in determining operator liability." *Taliesen*, 135 Wn. App. at 127. However, although MTCA was modeled after CERCLA, the applicable provision here— namely, the definition of an "owner or operator"—is different.

CERCLA defines "owner or operator," in relevant part, as "any person who owned, operated, or otherwise *controlled activities at such facility immediately beforehand*." 42 U.S.C. § 9601(20)(A) (emphasis added). MTCA defines "owner or operator" as "[a]ny person with any ownership interest in the facility or who exercises *any control over the facility*." RCW 70.105D.020(22) (emphasis added).

In both *Taliesen* and *Unigard*, the courts analyzed liability under CERCLA without discussing the definitional differences between CERCLA and MTCA. *See Taliesen*, 135 Wn. App. at 127; *see also Unigard*, 97 Wn. App. at 428. Because the language of the provision in MTCA differs from the language in CERCLA, *Taliesen*'s and *Unigard*'s holdings relying on an interpretation of CERCLA liability are not persuasive.

Furthermore, both *Taliesen* and *Unigard* are distinguishable. In *Taliesen*, the court addressed whether a subcontractor was liable for following the instructions of an "owner or operator," and found that the subcontractor did not have authority over the site because it did not have authority to decide where to drill, and the drilling was the cause of the contamination. *Taliesen*, 135 Wn. App. at 128. In *Unigard*, the court addressed whether a corporate officer and sole shareholder can hide "behind the corporate shield" for the actions of the corporate "owner or

operator." *Unigard*, 97 Wn. App. at 428-29. Here, DNR had authority to control the activities allowed on the aquatic lands within the Site and actually exercised that control.

Ecology, the agency tasked with administering MTCA, disagrees with DNR's interpretation of operator liability and describes the logical result of DNR's position. "DNR's proposed standard . . . would effectively replace the existing words of the statute—an owner or operator is one who exercises '*any control* over the facility,'—with a materially different and narrower set of words: an owner or operator is one who exercises '*actual control* over the *polluting activity*.'" Br. of Amicus Curiae Ecology at 7 (citation omitted). Ecology is tasked with administering MTCA and its regulations, and we defer to the administrating agency's interpretation of the statute. RCW 70.105D.030; *Shaw v. Dep't of Ret. Sys.*, 193 Wn. App. 122, 128, 371 P.3d 106 (2016); *Puget Soundkeeper All. v. Pollution Control Hearings Bd.*, 189 Wn. App. 127, 136, 356 P.3d 753 (2015).

In liberally construing MTCA, we hold that DNR is an "owner or operator" of the Site. Thus, the superior court erred by granting DNR summary judgment and dismissing the contribution action against DNR.

3.      DNR's Policy Concerns

DNR argues that Pope's interpretation of MTCA would be inconsistent with the purposes of MTCA and would subject Washington taxpayers to excessive liability. DNR claims that if we hold that DNR is an "owner or operator,"

> [I]t is easy to conceive that the State's potential liability could be extensive for contamination on the State's 2.6 million acres of aquatic lands that DNR manages. This liability would attach regardless of any DNR involvement with the activities that led to the pollution.

Br. of Resp't at 26. But these are policy arguments. Such policy arguments are better suited for the legislature's consideration.

In addition, DNR conflates the threshold determination of liability under MTCA with the final apportionment of the extent of liability. We are tasked with determining whether summary judgment on the issue of whether DNR can be liable as an "owner or operator" is appropriate—not the scope or propriety of the final apportionment of the extent of liability. As Ecology notes, "[i]t is possible for DNR to be liable for a site under MTCA and not bear any equitable portion of the cleanup costs for the site." Br. of Amicus Curiae Ecology at 16 n.8 (citing *Seattle City Light v. Dep't of Transp.*, 98 Wn. App. 165, 174, 177, 989 P.2d 1164 (1999) (holding that the Department of Transportation was liable under the MTCA, but that it was not responsible for any of the cleanup costs)). Thus, we decline to determine the legal issue before us based on policy concerns.

We hold that DNR is an "owner or operator" under MTCA and reverse the superior court's summary judgment order.

_____
Lee, P.J.

I concur:

_____
Sutton, J.

No. 47861-7-II

MELNICK — (dissent) I respectfully dissent from the majority's interpretation of the term "owner or operator" as it is used in RCW 70.105D.020. I would therefore affirm the trial court's determination that the Department of Natural Resources (DNR) is neither an owner nor an operator of the facility under the Model Toxic Control Act (MTCA). DNR is the manager of the state-owned aquatic lands.

In coming to this conclusion, I agree with the majority that we utilize the plain meaning of the statutes in question. In pertinent part, the following statutes are critical to the analysis.

I.      STATUTES

A.      MTCA – Chapter 70.105D RCW

"Facility" means (a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, vessel, or aircraft, or (b) any site or area where a hazardous substance, other than a consumer product in consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be located.

RCW 70.105D.020(8).

"'Owner or operator' means: (a) Any person with any ownership interest in the facility or who exercises any control over the facility." RCW 70.105D.020(22).

"'Person' means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, state government agency, unit of local government, federal government agency, or Indian tribe." RCW 70.105D.020(24).

14

B.      Public Lands – Title 79 RCW

Pursuant to RCW 79.02.010 the aquatic lands at issue in this case are owned by the State. "'Aquatic lands' means all state-owned tidelands, shorelands, harbor areas, and the beds of navigable waters." RCW 79.105.060(1). Management of the aquatic lands is delegated to DNR. RCW 79.105.010; RCW 79.105.210(4).

The legislature finds that state-owned aquatic lands are a finite natural resource of great value and an irreplaceable public heritage. RCW 79.105.010. The legislature recognizes that the state owns these aquatic lands in fee and has delegated to the department the responsibility to manage these lands for the benefit of the public. RCW 79.105.010.

RCW 79.105.210(4) states, "The power to lease state-owned aquatic lands is vested in the department, which has the authority to make leases upon terms, conditions, and length of time in conformance with the state Constitution and chapters 79.105 through 79.140 RCW."

II.     DNR IS NOT AN OWNER OF THE FACILITY BECAUSE IT DOES NOT HAVE AN OWNERSHIP INTEREST IN THE FACILITY.

Although the majority does not distinguish between the terms owner and operator, the plain language of the statute at issue clearly differentiates between the two.

An "'owner'" is "[a]ny person with any ownership interest in the facility." RCW 70.105D.020(22)(a). An "'operator'" is any person "who exercises any control over the facility". RCW 70.105D.020(22)(a). As the majority points out, the parties do not dispute that the state owns the property on which the facility is located. *See* RCW 79.105.010. Under MTCA, the state is not a person, but DNR is. RCW 70.105D.020(24). The majority, however, holds that DNR has an ownership interest in the site and is not a mere manager. I disagree.

15

DNR is a creature of statute and derives its power from the legislature. "An agency may exercise only those powers conferred by statute, and cannot authorize action in absence of statutory authority." *Northlake Marine Works, Inc. v. Dep't of Nat. Res*., 134 Wn. App. 272, 282, 138 P.3d 626 (2006). "DNR has been granted authority to manage state aquatic lands." *Northlake Marine Works, Inc.*, 134 Wn. App. at 287.

In coming to this conclusion, I am mindful that the legislature has emphasized, "The purpose of RCW . . . 79.105.010 through 79.105.040 is to articulate a management philosophy to guide the exercise of the state's ownership interest and the exercise of the department's management authority, and to establish standards for determining equitable and predictable lease rates for users of state-owned aquatic lands." RCW 79.105.020. The legislature specifically says that the state has an ownership interest in aquatic lands and DNR has management authority. RCW 79.02.010(1); RCW 79.105.210.

I would note that although MTCA does not define "ownership interest," the legislature has defined this term in a wholly different context. It is the only definition of "ownership interest" I could find in our statutes. In RCW 2.48.180(1)(c), the legislature, in part, defined "'[o]wnership interest'" as "the right to control the affairs of a business." I find this definition to be persuasive in the current context.

DNR, a state agency, is in fact the manager of the aquatic land but does not have an ownership interest in the facility.[16]

---

[16] Some amici cite to *Oberg v. Dep't of Nat. Res.*, 114 Wn.2d 278, 279, 787 P.2d 918 (1990), for authority. However, in that case, a statute utilized in analyzing the issues specifically defined "DNR as an owner of forest land.

16

III     DNR Is Note An Operator Of The Facility Because It Does Not Exercise
        Any Control Over The Facility.

It is equally clear that DNR is not the "operator of the facility." It does not exercise control of the facility or the site. While DNR manages the site on behalf of the state, it does not exercise control of the facility. RCW 79.105.010; RCW 79.105.060(20).

This recognition seemed obvious to DNR and the Department of Ecology (Ecology). In December 1992, Ecology and DNR executed a Memorandum of Understanding (MOU). It recognized that aquatic lands are "owned by the people of the State and administered by the Washington Department of Natural Resources. . . . As the public's custodian of those lands, DNR has a vital interest in ensuring that they are free of contamination." Clerk's Papers (CP) at 283.

This MOU articulated the difference between operating the facility and managing it. DNR may have reasonable defenses to MTCA liability which "may apply to situations where DNR did not: control the finances of the facility, manage the employees of the facility, manage the daily business operations of the facility, or have authority to daily operate/maintain environmental controls at the facility." CP at 289. This language in the MOU evinces Ecology's recognition that DNR's role as a manager was to act as the public's custodian of the land, and that it would not be liable under MTCA unless it played an active role in controlling the operation of the facility. In this case, it must be remembered that Ecology only named DNR as a potentially liable person.

By analogy, and assuming the same definitions apply, an owner of rental property can have an agent who finds renters for the property and signs the leases. If that agent signs a lease setting conditions for the rental property, including authorizing the renter to have a dog, and that dog subsequently bites somebody, under the majority's reasoning, the agent is potentially liable because it operated the rental property. Such a conclusion is at odds with our jurisprudence.

17

Both *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 128, 144 P.3d 1185 (2006), and *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 428, 983 P.2d 1155 (1999), take a similar approach. Both cases interpreted MTCA and, because it was modeled on the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA),[17] used the federal law as persuasive authority in determining how we should interpret our state law. They relied on interpretations of CERCLA, including *United States v. Bestfoods*, 524 U.S. 51, 118 S. Ct 1876, 141 L. Ed. 2d 43 (1998), which it found persuasive.

In both *Taliesen and Unigard*, we adopted the CERCLA liability standard that, "[w]ith few exception," courts have been unwilling to impose CERCLA liability upon an non-owner of the property if the party did not participate in, or actually exercise control over, the operations of the facility. *Unigard*, 97 Wn. App. at 429; *Taliesen*, 135 Wn. App. at 127. In *Taliesen*, we said, "The persuasive authority of the federal cases demonstrates that the key word in our state statute is 'control', not 'any.'" 135 Wn. App. at 128. The contractor who worked on the property did not have "'any *control*' in the decision-making sense intended by [CERCLA]. The trial court properly concluded that [he] did not have operator liability." *Taliesen*, 135 Wn. App. at 128.

The majority says these cases were wrongly decided. However, it is axiomatic that "the Legislature is presumed to know the existing state of the case law in those areas in which it is legislating." *Price v. Kitsap Transit*, 125 Wn.2d 456, 463, 886 P.2d 556 (1994); *Wynn v. Earin*, 163 Wn.2d 361, 371, 181 P.3d 806 (2008); *Osborn v. Grant Cty. By & Through Grant Cty. Comm'rs*, 130 Wn.2d 615, 623, 926 P.2d 911 (1996). In addition, the "prior judicial use of a term

---

[17] 42 U.S.C. § 9601 and its 1986 reenactment, the Superfund Amendments and Reauthorization Act of 1986 (SARA).

*City of Seattle (Seattle City Light) v. Dep't of Transp.*, 98 Wn. App. 165, 170, 989 P.2d 1164 (1999)

will be considered since the legislature is presumed to know the decisions of this court." *In re Marriage of Gimlett*, 95 Wn.2d 699, 702, 629 P.2d 450 (1981).

Here, DNR signed the lease which established permitted uses for the property; however, DNR did not exercise control over the facility. Because DNR did not have an ownership interest in or control over the operations of the facility, I respectfully dissent.

_____
Melnick, J.