# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>TOMI LEE INGERSOLL,<br><br>                 Petitioner,<br><br>    v.<br><br>JOHN PATRICK INGERSOLL,<br><br>                 Respondent. | No. 49229-6-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. – John Ingersoll appeals the trial court's parenting plan entered in a dissolution action regarding his marriage to Tomi Ingersoll. The parenting plan designated Tomi[1] as the primary residential parent of John and Tomi's two children and placed limitations on John's contact with the children under RCW 26.09.191(3)(c) based on a finding that he had an alcohol problem that affected his ability to parent.

We hold that (1) the trial court was not required to make a detailed finding that John's alcohol problem would cause specific harm to the children to impose a limitation on his conduct under RCW 26.09.191(3)(c), (2) substantial evidence supported the trial court's finding that John's alcohol problem affected his ability to parent and warranted a limitation on his contact with the children, (3) substantial evidence supported the trial court's finding that Tomi did not

---

[1] To avoid confusion, first names are used to identify John and Tomi. No disrespect is intended.

have a history of acts of domestic violence, and (4) the trial court did not improperly base its designation of Tomi as the primary residential parent on her status as the primary residential parent in the temporary parenting plan.

Accordingly, we affirm the trial court's parenting plan.

FACTS

John and Tomi were married in 2000. During their marriage they had two children. By 2012, the marriage had deteriorated and the couple had several intense arguments. Once, Tomi threatened to kill herself with a knife and then threatened to kill John, although John just laughed at Tomi's threats. Another time Tomi kicked open the bathroom door during an argument and then repeatedly hit John's chest after he grabbed her. Witnesses also claimed that Tomi choked John at a family gathering, although she denied that she choked him. John once held his pistol to his head after an altercation with Tomi.

During this tumultuous time John was drinking regularly, which increased the conflicts. Tomi and John had gone to a group meeting for alcoholics and their affected family members, but the meetings became a point of contention. The frequent and violent fights frightened Tomi to the point that she feared for her life. She eventually got a friend's help to flee the house and she went with the children to a shelter. Following several short-term moves, Tomi moved with the children to live near her parents in Alaska.

Tomi filed a dissolution action in Grant County. The trial court in Grant County entered a temporary parenting plan that designated Tomi as the primary residential parent. A guardian ad litem (GAL) from Grant County met with John, Tomi, and the children on several occasions during 2012 and 2013. The GAL raised questions about the credibility of both John and Tomi in

his reports. Following a change of venue to Pierce County, a new GAL evaluated the family members and made written recommendations to the court.

After a bench trial, the trial court entered a permanent parenting plan that designated Tomi as the primary residential parent. In the parenting plan, the court found that John had a long-term problem with alcohol that "gets in the way of [his] ability to parent." Clerk's Papers (CP) at 72. The court also entered an additional finding that John's alcohol problem "includes or influences behavior requiring psychological evaluation and treatment." CP at 81-82. Based on these findings, the court placed limitations on John's conduct that included abstaining from alcohol, enrolling in a random urinalysis program, and enrolling in counseling therapy with a psychologist to address his alcohol dependence and other issues. The parenting plan stated that John's parenting time would be suspended if he did not comply with the court's limitations.

The parenting plan also included the court's finding that neither parent had a problem with domestic violence requiring a mandatory limitation on parenting time.

John appeals the trial court's parenting plan.

## ANALYSIS

A.    PARENTING PLAN PROVISIONS

A trial court has broad discretion in developing a parenting plan. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). This discretion is guided by (1) RCW 26.09.184, which states the objectives of a parenting plan and identifies the required provisions; (2) RCW 26.09.187(3)(a), which lists seven factors that the court must consider when adopting residential provisions; and (3) RCW 26.09.002, which declares that the best interests of the child is the standard for determining parental responsibilities. *See Katare*, 175 Wn.2d at 35-36. In

addition, the trial court's discretion is guided by RCW 26.09.191, which provides certain factors that *require* limitations on a parent's residential time (subsection (2)) and *permit* limitations on parenting plan provisions (subsection (3)). *See Katare*, 175 Wn.2d at 36.

RCW 26.09.187(3) states that a child's residential schedule must be consistent with RCW 26.09.191 and that the seven factors listed in RCW 26.09.187(3)(a) must be considered only if limitations imposed under RCW 26.09.191 are not dispositive of the residential schedule.

We review a trial court's parenting plan for an abuse of discretion. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A trial court abuses its discretion where its decision is manifestly unreasonable or based upon untenable grounds or reasons. *Id.* The trial court's findings of fact are verities on appeal as long as they are supported by substantial evidence. *Id.* Substantial evidence is that which is " 'sufficient to persuade a fair-minded person of the truth of the matter asserted.' " *Id.* (quoting *Katare*, 175 Wn.2d at 35). We do not review the trial court's credibility determinations or weigh evidence. *Black*, 188 Wn.2d at 127.

We are extremely reluctant to disturb child placement decisions "[b]ecause the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses." *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016).

B.     RESTRICTIONS BASED ON ALCOHOL ABUSE

John argues that the trial court abused its discretion in placing a limitation on his contact with the children because (1) the court was required to make a detailed finding that his alcohol problem would cause specific harm to the children to impose a restriction under RCW 26.09.191(3)(c), and the court's boilerplate finding regarding the restriction was insufficient to

satisfy this requirement; (2) even if the court's finding was sufficient, substantial evidence did not support that finding. We disagree with both arguments.

1. Statutory Provisions

Under RCW 26.09.191(3), the trial court "may preclude or limit any provisions of the parenting plan" if at least one of seven listed factors exist. The existence of one of the factors permits but does not require the trial court to impose limitations. *See Katare*, 175 Wn.2d at 36. The rationale for imposing limitations on a parenting plan is that "[a] parent's involvement or conduct may have an adverse effect on the child's best interests." RCW 26.09.191(3).

The third factor that permits a trial court to impose limitations is "[a] long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions." RCW 26.09.191(3)(c). A seventh factor is a catchall provision for "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child." RCW 26.09.191(3)(g).

2. Requirement of Finding of Specific Harm

To support imposing limitations on John's contact with the children, the trial court made a factual finding that tracked the language of RCW 26.09.191(3)(c): "John Ingersoll has a long-term problem with drugs, alcohol, or other substances that gets in the way of his/her ability to parent." CP at 72. John argues that this finding was insufficient because a trial court is required to make a detailed finding of specific harm to the child before imposing restrictions under any of the subsections of RCW 26.09.191(3). We disagree.

We must determine whether RCW 26.09.191(3) requires a trial court to make certain findings to support limitations on parenting plan provisions. Statutory requirements are a

5

question of statutory interpretation, which we review de novo. *Pope Res. v. Dep't Nat. Res.*, 197 Wn. App. 409, 416-17, 389 P.3d 699 (2016), *review granted,* 188 Wn.2d 1002 (2017).

Nothing in RCW 26.09.191 expressly requires a trial court to make any specific level of findings before limiting parenting plan provisions under RCW 26.09.191(3). *See* RCW 26.09.191(6) (stating only that "[i]n determining whether any of the conduct described in this section has occurred, the court shall apply the civil rules of evidence, proof, and procedure").

John relies on the Supreme Court's decision in *In re Marriage of Chandola*, 180 Wn.2d 632, 327 P.3d 644 (2014). In that case, the court addressed a trial court's imposition of limitations on a parent's contact with his child under the catchall provision, RCW 26.09.191(3)(g). *Id.* at 636. The issue was what type of adverse effect on the child's best interests a trial court must find before imposing parenting plan limitations under the catchall provision, subsection (3)(g). *Id.* (quoting RCW 26.09.191(3)(g)). The court's holding was that limitations imposed under RCW 26.09.191(3)(g) "must be reasonably calculated to prevent relatively severe physical, mental, or emotional harm to a child." *Chandola*, 180 Wn.2d at 636.

In the course of its analysis, the court in *Chandola* stated, "RCW 26.09.191(3)(g) does require a *particularized finding of a specific level of harm* before restrictions may be imposed." *Id.* at 646 (emphasis added). John claims that this rule also applies to the other subsections of RCW 26.09.191(3).

But the court's explanation of the rule does not support John's claim. The court pointed out that the other subsections of RCW 26.09.191(3) "concern either the lack of any meaningful parent-child relationship whatsoever or conduct . . . that seriously endangers the child's physical or emotional well-being." *Chandola*, 180 Wn.2d at 647. In other words, the legislature already

6

had determined that the conduct described in subsections (3)(a)-(f) involved harm to the child. The court concluded that "the nature of the specific grounds for parenting plan restrictions listed [in] RCW 26.09.191(3)(a)-(f)" show that the legislature intended subsection (3)(g) to apply only when necessary to protect the child from harm "similar in severity to the harms posed by the 'factors' specifically listed in RCW 26.09.191(3)(a)-(f)." *Chandola*, 180 Wn.2d at 648.[2]

The court's implication in *Chandola* was that application of subsection (3)(g) requires a finding of specific harm to the child because application of the other subsections *necessarily*, by their terms, involves a finding of harm to the child. *See id.* at 646-48. For example, under subsection (3)(c) a parent's long-term alcohol abuse that interferes with parenting functions necessarily "seriously endangers the child's . . . emotional well-being." *Id.* at 647.

We conclude that *Chandola* requires detailed findings of specific harm to the child only for application of RCW 26.09.191(3)(g), not for application of any of the other subsections of RCW 26.09.191(3).

John also cites this court's decision in *In re Marriage of Underwood*, 181 Wn. App. 608, 326 P.3d 793 (2014), for the proposition that a trial court must enter detailed findings when applying RCW 26.09.191(3)(c). But the court in that case required detailed findings in a very narrow situation: "*allowing a child to decide* whether to have *any* residential time with the non-custodial parent based solely on the RCW 26.09.191(3) factors." *Underwood*, 181 Wn. App. at

---

[2] In its conclusion regarding the necessity of harm, the court referred generally to RCW 26.09.191(3) rather than specially to RCW 26.09.191(3)(g). This appears to be an inadvertent omission. Considered in context – following directly after a reference to RCW 26.09.191(3)(a)-(f) – the court's holding clearly referred only to subsection (3)(g).

612-13 (emphasis added). *Underwood* did not impose a detailed finding requirement for any application of RCW 26.09.191(3).

Finally, John cites *Thompson v. Thompson*, 56 Wn.2d 683, 355 P.2d 1 (1960), to support his position. In that case, the court affirmed an award of custody of a child to the father despite the mother's assertion that he was a "drunkard." *Id.* at 685. The court discounted this assertion because there was no evidence that his drinking habit rendered the father incompetent in any way. *Id.* But *Thompson* said nothing about the detail of the trial court's findings, and supports only a rule that there must be some connection between a parent's alcohol problems and parenting abilities. Here, the trial court expressly found that John's alcohol problem "gets in the way of [his] ability to parent." CP at 72.

We hold that the trial court's general finding that tracked the language of RCW 26.09.191(3)(c) was sufficient for the court to impose limitations on John's contact with his children under that subsection.

3. Substantial Evidence Supporting Restriction

John argues that substantial evidence did not support the trial court's finding that John had a long-term problem with alcohol that got in the way of his ability to parent. We disagree.

John testified that he drank to deal with the problems in his marriage. John further testified that his use of alcohol had been unhealthy. Tomi testified that during their time together John would drink a lot of alcohol at home. She stated that he would drink an entire bottle of liquor in a single day. We hold that this evidence was sufficient to support the trial court's finding that John had an alcohol problem.

Regarding the effect of John's alcohol use on his parenting, Tomi testified that John's use of alcohol played a role in the arguments between them. He would become angrier and more violent, and then he would have a short temper with the children. Tomi stated that when he would drink he would yell at and spank the children.

The Pierce County GAL testified that alcohol exacerbated John's problematic personality traits that made him prone to impulsive, self-indulgent, and short-sighted behavior. And the GAL stated that both children were apprehensive about John's anger. One child told the Grant County GAL that her primary concern was with John's anger and behavior during Skype visits. The other child told a therapist that he was afraid when John drank alcohol.

John relies on testimony from the Pierce County GAL and a person who supervised his visits with his children that did not identify any risk of harm to the children from John's alcohol use. But under RCW 26.09.191(3)(c), the standard is whether the alcohol problem "interferes with the performance of parenting functions." As we conclude above, the trial court was not required to make a specific finding that the problem caused harm to the children.

The trial court's finding involves witness credibility, and we do not interfere with the trial court's credibility determinations. *Black*, 188 Wn.2d at 127. In addition, the trial court is in the best position to evaluate the evidence. *C.T.*, 193 Wn. App. at 442. We hold that this evidence was sufficient to support the trial court's finding regarding John's alcohol problem.

The evidence is sufficient for a fair-minded person to conclude both that John had an alcohol problem and that his problem got in the way of his ability to parent. Therefore, we hold that substantial evidence supported the trial court's RCW 26.09.191(3)(c) finding.

C.     DESIGNATION OF PRIMARY RESIDENTIAL PARENT

John challenges the designation of Tomi as the primary residential parent in the parenting plan. He argues that the trial court erred in failing to enter limitations against Tomi for a history of acts of domestic violence under RCW 26.09.191(2)(a)(iii) and improperly relied on Tomi's status as the primary residential parent under the temporary parenting plan. We disagree.

1.   Finding of No Domestic Violence

The trial court made a specific finding in the parenting plan that neither parent had any problems, including domestic violence, that required a limitation on parenting time. John argues that substantial evidence does not support the trial court's finding that Tomi's behavior did not constitute a history of domestic violence. Therefore, he argues the trial court was required to limit Tomi's residential time. We disagree.

Under RCW 26.09.191(2)(a), "[t]he parent's residential time with the child shall be limited" if the trial court finds that the parent has engaged in certain specified conduct. If the trial court finds that a parent has engaged in such conduct, the limitation of that parent's residential time is mandatory. *Underwood*, 181 Wn. App. at 611-12.

One type of conduct that requires a limitation on residential time is engaging in "a history of acts of domestic violence as defined in RCW 26.50.010([3])[3] or an assault or sexual assault which causes grievous bodily harm or the fear of such harm." RCW 26.09.191(2)(a)(iii). RCW 26.50.010(3)(a) defines "domestic violence" to include "[p]hysical harm, bodily injury, assault,

---

[3] This RCW includes an asterisk that leads to the following note: "Reviser's note: RCW 26.50.010 was alphabetized pursuant to RCW 1.08.015(2(k), changing subsection (1) to subsection (3).

or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."

John argues that there was undisputed evidence that Tomi engaged in conduct meeting the statutory definition of domestic violence and constituting an assault that caused a fear of grievous bodily harm. He relies on Tomi's testimony that she admitted grabbing a kitchen knife and threatening to kill John, and kicking open a door and beating John's chest. He also relies on an incident in which witnesses stated that Tomi choked John at a family gathering, although Tomi denied that she choked him. John claims that Tomi's admission of at least the first two incidents requires a finding of domestic violence as a matter of law.

However, Tomi actually provided more detail regarding these incidents than John summarizes in his brief. The knife incident occurred when Tomi told John that she and their 15-month-old daughter were going to California to visit her sister and John grabbed the child and refused to let her go. Although the child was crying, John was taunting Tomi and telling her that she could not have the child. Tomi admitted grabbing a knife and threatening to kill herself and then threatening to kill John, but she said that John just laughed at her. Given John's response, this evidence supports a finding that this incident did not involve "fear of imminent physical harm, bodily injury or assault" under RCW 26.50.010(3)(a).

Tomi testified that the incident when she hit John's chest started when she kicked open the bathroom door while John was taking a shower. John was mad, and grabbed her arms and pushed her from the bathroom to the bedroom. In response, Tomi hit John repeatedly in the chest. This evidence supports a finding that Tomi was defending herself rather than assaulting John.

11

Tomi denied that she choked John at the family gathering. She testified that John was grabbing her younger brother and messing with him, and she tried to gently push John away. Tomi's arm moved up from John's chest and John claimed that he was choking her, but Tomi denied wrapping her hands around John's neck. Tomi's testimony supports a finding that she did not choke John.

The Grant County GAL did not offer any opinion on domestic violence allegations regarding either party. The Pierce County GAL found it difficult to reach a conclusion or make recommendations regarding the parties' reciprocal allegations of domestic violence, but testified that any such allegations did not impact his opinion on the parenting abilities of either party.

The totality of the evidence is sufficient to persuade a fair-minded person that Tomi did not have a history of acts of domestic violence. Therefore, we hold that substantial evidence supported the trial court's finding that Tomi did not have a problem with domestic violence that required limitations on her parenting time.

 2. Reliance on Temporary Parenting Plan

John also argues that the trial court improperly based its designation of Tomi as the primary residential parent on her status as the primary residential parent in the temporary parenting plan, in violation of RCW 26.09.191(5). We disagree.

As discussed above, the trial court has broad discretion in developing a permanent parenting plan. *Katare*, 175 Wn.2d at 35-36. However, RCW 26.09.191(5) expressly states that a trial court may not draw presumptions from the temporary parenting plan. Under this statute, a trial court cannot establish a permanent parenting plan solely on the basis of the temporary parenting plan or presume that maintaining the same primary residential parent is in the child's

best interest. *In re Marriage of Kovacs*, 121 Wn.2d 795, 808-09, 854 P.2d 629 (1993). Further, the trial court cannot apply a presumption based on the temporary parenting plan to determine the primary residential parent when the analysis of the factors in RCW 26.09.187(3)(a) results in a "tie." *In re Marriage of Combs*, 105 Wn. App. 168, 176-77, 19 P.3d 469 (2001).

Here, the trial court's designation of Tomi as the primary residential parent was consistent with the RCW 26.09.191(3)(c) limitation placed on John, and there is no indication in the record that the court applied a presumption based on the temporary parenting plan. Accordingly, we hold that the trial court did not improperly base its designation of Tomi as the primary residential parent on her status in the temporary parenting plan.

## CONCLUSION

We affirm the trial court's parenting plan.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.